## CARPENTER STEEL CO. v. METROPOLITAN-EDISON CO.

(District Court, E. D. Pennsylvania. January 21, 1921.)

No. 2113.

1. **Electricity ☞11—Consumer has right to day in court on determination of indebtedness.**

    An electric power consumer has a right to its day in court, to have the amount of its indebtedness to the power company, which was in dispute between them, determined before being compelled to pay the amount by the shutting off of its power.

2. **Electricity ☞11—Agreement to supply power pending determination of dispute is binding.**

    An agreement by an electric power company to supply power during the pendency of any dispute over the correctness of its bills is binding on the power company pending the determination of the reasonableness of its published rates by the state Public Service Commission, on the power company being assured of the payment of the amount due it as soon as the sum is determined.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Courts ⊕⊶493 (3)—United States court has jurisdiction to restrain shutting off power pending determination of dispute as to rates.**

The United States District Court has jurisdiction of the subject-matter of the suit to restrain a power company from shutting off the power of a consumer pending determination by the state Public Service Commission of the reasonableness of its published rates, where it has jurisdiction of the cause and of the parties.

**4. Courts ⊕⊶493 (1)—Concurrent jurisdiction of other tribunals, not yet exercised, does not deprive United States court of jurisdiction.**

The fact that other courts, or a state Public Service Commission, have likewise jurisdiction of the subject-matter of a suit, affords no ground for the United States District Court to refuse to grant the relief prayed, if no other tribunal has as yet exercised its jurisdiction.

**5. Electricity ⊕⊶11—Company cannot make itself sole judge of justice of charges.**

An electric power company, which had agreed not to shut off the power for nonpayment of disputed bills, cannot make itself the sole judge of the justice of its claims, by filing its rate schedules with the state Public Service Commission, which under the state law became the established rates until set aside by the commission, so as to defeat an injunction against the shutting off of the power for refusal to pay the scheduled rates without security for refund pending the decision of the Commission.

**6. Electricity ⊕⊶11—Construction of published regulation is judicial question.**

The meaning of the published rules and regulations filed with the state Public Service Commission by an electric power company must be judicially found.

In Equity. Suit for injunction by the Carpenter Steel Company against the Metropolitan-Edison Company. On trial hearing on bill, answer, and proofs. Decree for plaintiff.

See, also, 268 Fed. 980.

John A. Keppelman, of Reading, Pa., for plaintiff.
Ralph J. Baker, of Harrisburg, Pa., S. P. Light, of Lebanon, Pa., and H. P. Keiser, of Reading, Pa., for defendant.

DICKINSON, District Judge. The proofs have added nothing to the fact findings which might be made on the admissions of the parties, except possibly one, which we decline to make. The findings made are embraced in the following history of the case:

The plaintiff had an agreement with the defendant by which the latter was to supply the former with power. The refusal or failure to furnish the supply means plain ruin to the plaintiff. The defendant threatens the plaintiff with such ruin. The bill was filed to restrain against this irreparable injury. The refusal of the defendant to supply power is justified by the averred refusal of the plaintiff to pay. The contract to supply fixed the price. The bills rendered largely exceed what they should be at the contract rates. This is explained by the circumstance that after the contract was made the defendant, in accordance with the provisions of the act of assembly which established the Pennsylvania Public Service Commission, published a tariff or schedule of rates, the legal effect of which was to abrogate the contract rate. After the tariff rates became effective, the rate payable by the plaintiff was no longer the contract rate, but the tariff rate until such time as the Public Service Commission, on complaint that the

tariff rates were unreasonable, should so find and establish the lawful rate.

The plaintiff (with other consumers) made this complaint, and the reasonableness of defendant's tariff rate is now before the commission, but as yet undetermined. It is conceded that the law of Pennsylvania is that the published tariff rates are the rates to be paid until the Commission has found them to be unreasonable. Thus far there is no controversy between the parties, other than the one pending before the Commission, and no dispute over the proposition that the rate controversy is one which the Commission, and the Commission alone, can determine.

The defendant continued to supply power after the new tariff rates were established and published as the effective rates. The correctness of the amounts of the bills rendered was disputed by the plaintiff. This dispute was attempted to be adjusted, and for a time was adjusted, through an arrangement reached at a conference of all the counsel concerned, that the bills should be paid as rendered upon the defendant giving a refunding bond for the return of all moneys paid over and above the sum eventually found to be payable. The payments were then made and the bonds given, covering three periods of six months each. The defendant then refused to give bond thereafter, and the plaintiff retorted with a refusal to pay the bills, on the ground that they were in dispute. This position of the plaintiff was met by notice from the defendant that it would shut off the supply unless the disputed bills were paid.

The plaintiff thereupon filed the present bill, basing its cause of action upon the inequity of the defendant's threatened act, in that it had agreed not to use this means to enforce payment of any bills which were in dispute, and had adjusted the dispute by its further agreement to accept payment under an agreement to refund any payments made in excess of the sum found to be justly payable. In answer the defendant sets up that the tariff rate is the rate justly payable, and that in consequence the collection of the sums of money thus indicated is not inequitable; that the contract of the defendant to forego collection by the strong hand until the amount of its just claim was determined had been abrogated (as was its rate contract) by the published schedule of rates and regulations; and that it had not agreed to continue the working arrangement referred to indefinitely, and had the right to withdraw from it at any time.

Inasmuch as the plaintiff, in meeting its obligation, to show its willingness to do equity before asking for equitable relief, has offered to give bond to pay any sum found to be due defendant, to pay the undisputed part of the bill and give bond for the disputed part, to pay the whole bill upon being assured of the return of the part of it found not to be justly payable, and to do anything which might be equitably required of it, we confess to an utter inability to discover anything of any practical, or even academic, importance in the present dispute. At the most, the difference between the respective positions of the parties is that between a remedy which the law affords for the col-

lection of a bill and an extrajudicial remedy which the creditor may have at hand.

We have already indicated the real question involved as we analyze the case, and the proper answer to it. The question and its answer are embraced in these propositions:

[1] (1) The plaintiff has a right to its day in court to have the amount of its indebtedness to the defendant determined.

[2] (2) The defendant, having agreed to supply power during the pendency of any dispute over the correctness of its bills, is, under the facts of this case, bound to do so upon being assured of payment of the sum due to it as soon as the sum is determined.

[3] (3) This court has jurisdiction of the subject-matter and (on the ground of diversity of citizenship) of the cause, and also of the parties by service and appearance.

[4] (4) The fact that other courts have concurrent jurisdiction, or (if that also be the fact) that the Public Service Commission has the like jurisdiction, affords no ground for this court to refuse to grant the relief prayed, no other tribunal having thus far exercised its jurisdiction.

None of these propositions have any interest, because of their novelty or importance in their application. Great importance, however, for some reason, is attached to the case by the parties. It has been very fully and ably discussed by counsel. Because of this we will meet every issue raised.

[5] 1. We find ourselves to be in full accord with the defendant in all the ultimate propositions of law involved. There is, indeed, no dispute concerning them. The defendant, on these propositions, advances very confidently the conclusion that the plaintiff in this proceeding has no defense to the defendant's claim, and that any court will so adjudge. The answer to this presents the whole question in a nutshell. If this be so, why not test this by asking some court to so find? Why resort to a strong-hand extrajudicial remedy, which you agreed to forego? Of course, if the court could so find in this proceeding, there would be no equity in the prayer of the plaintiff that the defendant be restrained from enforcing the collection of a bill which it was found was justly owing. This, however, is a finding which the court, in this proceeding, as the case is presented, cannot make. The defendant, for some reason, refuses to submit the justness of its claim to any court for decision, but insists upon being the sole judge of the sum due. The amount of the debt could have been determined by a simple expedient in this very proceeding. All that was necessary was that the defendant file an answer by way of a cross-bill, averring what the sum due was, and praying for this to be decreed. As the sum due would thus be found, the court would not restrain the defendant from the collection of a debt thus found to be due and payable. The same finding of what was due could be made in an action brought in any court having jurisdiction.

What the defendant is really doing is to ask this court to accept its word for the amount due. However probable it may be that all which the defendant claims is legally due, this court cannot make the find-

ing. We do make the finding that the correctness of the bills is in dispute, and that this dispute is not colorable, but bona fide. We also make the finding that the defendant agreed not to shut off the power because of the nonpayment of the disputed bills. We conclude from these findings that the sum due and payable must be found before the defendant can apply the remedy which it agreed to not sooner apply. We make no finding that the plaintiff has the right of the dispute. but merely that the defendant has not placed it within the power of this or any court to determine the merits of the dispute, and that the plaintiff has the right to have this determined before payment can be enforced by the strong hand.

Counsel for plaintiff, in arguing away from the conclusion that there is no dispute except the one over the reasonableness of the rate, seems to see in the coal consumption something out of which a defense to the claim arises. Upon this we pass no judgment, but confine ourselves, as before stated, to the findings that there is a dispute, and that the plaintiff has the right to have it judicially determined.

[6] 2. We find no merit in the position taken by defendant that the published rules and regulations abrogate the defendant's agreement not to shut off power. Conceding all for which defendant contends, except the meaning of the regulation, this meaning must be judicially found, and the meaning is in accord with its contract that it will not shut off power, except for nonpayment of "money due," or, in other words, bills as to the correctness of which there is no bona fide dispute.

3. Defendant asks us to find that it made no agreement to continue indefinitely the giving of refunding bonds. This we do in the negative form of refusing to find that defendant so agreed. We see nothing to be gained by a finding one way or the other. The plaintiff admittedly holds the promise of the defendant not to assert its power to take the law into its own hands. A second promise, if made, adds nothing. The question is whether the agreement is revoked by the regulation, and, if one is, both are. Inasmuch, however, as the finding affects counsel, we feel justified in making this further finding. There was a working arrangement made. Counsel for the plaintiff and his associates in this conference understood that it was to last throughout the controversy. Counsel, so thinking, so testified. Counsel for defendant, however, had in mind that it would not last indefinitely. So thinking, they have so stated. None of them recall the details with sufficient clearness to enable any one to decide just what actually took place at the conference, to justify the one inference or the other. Lawyerlike, having reached what each thought to be an understanding, they dismissed the details from their minds.

Our conclusion is that the plaintiff is entitled to have its prayer for relief granted upon terms. We have already indicated what these terms should be, so that counsel will doubtless be able to agree upon the form of the decree to be entered. Leave is accordingly given to submit drafts, and we retain jurisdiction for the purposes of entering a decree in form; no decree being now made.